Good morning, your honors. My name is Kevin Gill, and I'm here representing Appellant Joseph M. Rimac. If it pleases the court, I'd like to try to reserve three minutes for rebuttal. All right. We are here today because the district court dismissed Mr. Rimac's complaint at the pleading stage, finding a lack of subject matter jurisdiction under 42 U.S.C. 1983. Now, this case is not just about cutting down a couple trees. It's about a case where the district court found that there was a lack of subject matter jurisdiction under a scheme to destroy private property in furtherance of a private vendetta while hiding behind the cloak of government authority. The district court here concluded that because the ultimate goal of the defendants was an unofficial act, meaning the destruction of the trees on Mr. Rimac's property, that the court was without subject matter jurisdiction, irrespective of the fact that defendants asserted color of authority in support of that private destructive act. But it's precisely that result, the assertion of authority of one's official position to justify private harm that 42 U.S.C. 1983 was designed to address. Let me ask you a question, counsel. Yes, Your Honor. As I understand the procedure in this case, there's a motion to dismiss an affidavit filed to suggest that there is no jurisdiction, correct? Yes, Your Honor. There was a motion. Did you file affidavits as well? We did not file affidavits, Your Honor. Okay. So at this point, we have affidavits in the record. So we're really looking at what I understand is not a facial challenge but a factual challenge to jurisdiction. Your Honor, that is true in part. The affidavits don't go directly to the events that are laid out in the complaint. The affidavits submitted with the motion basically have facts which go exactly to whether there ought to be jurisdiction here or not, correct? Your Honor, the affidavits don't go directly to that fact. The affidavits go to sort of the surrounding facts of, you know, the location of the tree and assertions of, you know, whether or not it was within an easement or not. But the chief says he didn't give anybody any orders to cut down the tree. The chief says he didn't give anybody any orders to cut down the tree, but he also does not say that he didn't tell him not to cut down the tree. Well, I guess on that particular point, let's save that for a little bit. I guess I find no facts in here that there was an agreement between Crawford and Duncan that they cut down the tree. Your Honor, respectfully, I think that the letter from the chief Crawford to Duncan recommending that the tree be removed without saying who should remove it, you know. There's an agreement between the two? That is an agreement. It's a contract? It's agreement by the chief that Duncan, you know, is justified in removing the tree. So is that, you know, what I think it looks to me at most would be putting you possibly in the acquiescence situation, which the Supreme Court has indicated wouldn't be enough in terms of finding State action. So I would view that at most acquiescence, but you're saying in your view it's basically the can-do go-ahead, the authority? Yes, Your Honor. It goes beyond acquiescence. If the chief had come out and said, you know, I'm not getting involved in this, you know, I will contact the county and tell them, you know, that this tree needs to be looked at or whatever, whatever the proper way is to go about removing trees or trimming trees back. So you're suggesting then with your argument that if someone goes to a community leader who's supposed to be making these determinations and the community leader says that in his opinion that these are the things that ought to happen, that that automatically gives to that other person the right to go out and make it happen? No, Your Honor. I'm not suggesting that. I'm suggesting that there are two aspects to that. First, the community leader did not just say that, you know, this ought to happen. There are channels that he's supposed to go through. He's supposed to contact the property owner. You know, you can't just tell the neighbor, yes, yeah, it should be removed, you know. You've got to go through proper channels. You've got to give notice to the property owner. I mean, that's required. That's under the California Constitution. You've got to give notice to the property owner. If you're going to damage property for public good. But he hadn't done anything. In other words, this is where I'm having some kind of disconnect. The government, so to speak, the public figure, hadn't done anything. He didn't remove the property. He didn't remove the property, but he, stepping back one, Officer Duncan, you know, who had been threatening to do damage to Mr. Imack's property for months, but didn't do it because he was afraid of, you know, being sued. So he contacted, you know, his colleague, the fire chief, and had him come out. And, you know, they talked about the tree, and Duncan, you know, wants to remove the tree. And the chief, you know, without doing any measurements or anything, said, you know, I'll give you a letter saying it has to be removed. The chief knew what was happening. You know, he, well, I don't believe the facts in the record substantiate the idea that there was some kind of an agreement between the parties that, oh, well, I want to get rid of this tree. Well, you give me a letter, and then I'll go get rid of it. There's nothing in the record about that. In fact, it seems to me that your contention is that where a government, an official government position is communicated to a private citizen, and the private citizen then unilaterally engages in conduct that deprives another of his civil rights, that that private action becomes state action. No, Your Honor, that's not quite what we're saying. What we're saying is that where a government agent understands that a private citizen intends to harm another and, you know, emboldens him to do that by giving him some plausible, you know, cover for his actions, that that falls within 1983, Section 1983. It's that decision to sort of extend the cloak of authority to this private destructive act. But I understand that you agree that the chief never told him to cut the tree down. We don't agree with that. Briefs. Your Honor, this is at the pleading stage. We have not done any discovery, no depositions, nothing. So we have no legit. That's not correct, Your Honor. What the complaint alleges is that Chief Crawford says that he did not tell him to cut down the tree. That's all that's alleged. It's not that he did not tell him to do it. He just says Chief Crawford said, and this is the allegation, that I don't remember what I said, but I don't think I told him to cut the tree down. It's sort of like if somebody comes in and talks to the sheriff and he says, you know, you're right, I think that guy ought to be arrested. Well, that doesn't mean you can go out and arrest the guy. You know, I mean, under your theory, virtually any interaction in which a public official agrees with you is either emboldening or is a direct invitation to go out and kind of be like a posse comitatus. Your Honor, I think that, I mean, here, if the sheriff had said, yeah, that guy should be arrested, and then after the citizen's arrest took place or whatever, you know, wrote a letter, said, yes, I agree that he should have been arrested, you've got multiple steps. Well, not after. I mean, at this point, the trees haven't been cut down yet. Oh, no. When he wrote the letter, the trees had been cut down. Now, that was the other question. Is that clear? Yes. I'm sorry. Is it clear when the trees were cut down? The trees were cut down sometime between this meeting that took place on the 17th and the date that this letter was written on the 24th. And we know that it was within that week. My worry, I guess, and the reason my question is in the first place, I have to read this record. We have a factual fight about subject matter jurisdiction. I have no pleading on your side that is verified or submitted. And therefore, I have to look at what facts are in this record to make my determination. Your Honor, I think, I mean, again, this is at the pleading stage. We haven't had the opportunity to develop the facts. We had a motion. We had affidavits filed. Yes, Your Honor, that's true. And no facts came from the plaintiff. I don't think that's correct, Your Honor. I think there were facts. What facts did you have? The plaintiff came with facts about, you know, who owned the property, with facts about how much, you know, how the tree was positioned. Where were they put? They were all defined in reply. In the reply affidavits or in the reply brief? I believe there was a reply declaration as well, Your Honor. All right. So in the declaration. So I look at your declaration. I'm going to look again to see if there was such a declaration. But, Your Honor, I don't look at the motions. Your Honor, again, you know, this was at the pleading stage. You know, we can't, we have no facts yet. You know, we have no declarations from the other side, nothing that we could put forward to sort of show what's happened. We haven't had the chance to develop the facts. Now, if this were at summary judgment stage and we still had these same problems, that's a different issue entirely. But here we didn't get to do any of that discovery. We didn't get to find out what really happened. We didn't get to talk to them and get, you know. But you had a motion with affidavits attached to it suggesting certain things, which is now a motion to challenge the jurisdiction of the court, and I'm looking to see what is it from your side I can even look at. I can't look at a motion. No, Your Honor. I've got to look at either an affidavit or I've got to have a verified complaint, and I haven't either. Your Honor, I believe that the allegations of the complaint are taken as true. No, they're not. Not for a factual motion? There is no way to respond to affidavits and say, here's what these guys did do, here's what they said, because we haven't had the opportunity to do that, to develop that part of the case yet. We can say what our client did. We can talk about facts about the property itself. But that's all we can do at this stage. We can't talk about their motivations. We don't have any evidence yet developed to talk to that. I see that I'm running over a bit. Do you want to reserve your time? I would like to reserve a little bit of time if that's okay. Thank you, Your Honor. Good morning, Your Honors. William Mitchell for Defendant Randy Duncan. My remarks will be brief here. We're sharing 10 minutes with three attorneys. Okay. It never works. All right. The district court judge got it right when he summed up the cases as a dispute between two neighbors about a tree. Which doesn't belong in federal court. And I think the chronology that's set forth in the complaint establishes that this was a unilateral action by Defendant Duncan as opposed to a state, a joint action. Counsel, what troubles me about this case is a dismissal under 12B. Now, the rule there is that you accept all of the facts that are in the complaint as true. And usually you allow an amendment to augment those facts because you have to say at this point to get a dismissal that there is no configuration of facts which could possibly give relief to the plaintiff. And I don't think you can see that from this case. After all, the state doesn't have to act. It allows someone to act under the color of state law. No agreement is required. When you read the Howerton opinion, it says there where the sheriff went along with the landlord, said that he created an appearance that the police sanctioned the eviction. So it doesn't have to have an agreement. It has to have been an action on the part of the state that emboldened or allowed that private individual to go ahead thinking that he had the authority of the state to do it. And it's very hard for me to see at this point in the pleadings that that is established because we always take everything that's said in the complaint as true. Right. And if there could be an amendment to embellish that, that has to be allowed. Well, first of all, the plaintiff could have filed an amended complaint in response to the motion to dismiss. It didn't. It also could have suggested to the court what it could have added to the complaint to fix the defense. I'm not saying that the complaint has pled is inadequate. Okay. Well, if you look at the allegations of the complaint itself, it affirmatively establishes that this is a unilateral act based on the timing. But that could be true. But if the state gave him some kind of color to the action, then it can proceed. But an after-the-fact letter can't give him color. We don't know what happened at the original meeting. It sounds like or certainly an assumption could be made that he said, yeah, the tree should come down, you tell me the measurements are such and such, the tree should come down, and I'll write you a letter. Well, I think the letter is the best evidence that it wasn't an after-the-fact letter and it was a recommendation only and the tree was cut down well before the letter was written. And I'm sorry, I do have to reserve my time or the time of the other attorneys here. Well, you know. She can answer. Okay, fine. Thank you. And she asked a good question. Sure. She got answers. So we don't really know what happened at that first meeting. We do know that it resulted in the tree being cut down, and we do know that it resulted in a letter from the fire chief. And what was the purpose of that letter? We don't know all of these things. Well, we have a factual letter, a factual evidence that's submitted that's undisputed, that there was no conspiracy between the two. Well, conspiracy is not needed. Either. All right, thank you. Thank you. Good morning. Stephen Cain for Fort Dick Fire Protection District and Chief Randy Crawford. I'll take up the mantle of what Judge Fletcher was just discussing. We do know from the pleadings, at least, that the plaintiff has alleged in paragraph 61 of the complaint that Chief Crawford did not instruct Mr. Duncan to cut down the tree himself. And I think it would be an amazing thing for this or any other court to suggest, from a pleading that doesn't say it, that, well, maybe it's possible that a public official told someone to violate the law. The complaint doesn't even say that. Let's not go there ourselves. Were there affidavits filed by the plaintiff in this particular matter after you made your motion? My recollection of the record is that there was perhaps an affidavit authenticating a few documents, but nothing factual saying here's what they said, here's what I said, nothing giving the degree of information that the court is looking for right now. The reason I ask that question, there are really two ways to file this motion for challenging jurisdiction. One would be the motion for a facial challenge, which is what my good colleague had to deal with. But the other is a factual challenge where we give no, absolutely no benefit to the complaint unless it's given some, unless some notary has suggested that it's true. And as I understand this particular matter, this was a factual challenge, not a facial challenge to the complaint. Yes, all the declarations are obviously on file, and there was a factual attack. But what was not? What was not? On that regard, the declarations submitted by my client and the other declarations do outline that there was no conspiracy or agreement to violate the law. Those, can we, on the motion to dismiss? Yes, you can, you consider the declarations other evidence. Well. On a motion to dismiss for lack of jurisdiction, the court is entitled to review other evidence. But it's a question of credibility. I mean, so here's what we have. We have meeting, trees cut down, letter. That's kind of the sequence of events. So the question is, is there sufficient inference among those events that would give rise to the ability to assert State action? I mean, that's what it boils, the case boils down to. The declarations lay out what happened. There are no counter declarations to create tribal issues or to create an inference of unreliability. There is one side being told of the story. It's not really contradicted by the complaint, excepting in the complaint's unproven allegations or adjectives, if you will. You know, frankly, counsel, when I've seen this kind of case, the judges moved it over to summary judgment. Your Honor, I think the real issue here is, have they suggested any way that this complaint could be saved? And the answer is no. And I think the district court saw that, too. This is a fairly factual complaint. It lays out one, two, three, what they say happened. That one, two, three is at least facially backed up by some of the exhibits. The letter from my client is obviously in the record and speaks for itself. The declarations are in the record. They speak for itself. The only way this complaint could be amended to get around the district court's ruling is to stand it on its head utterly and contradict all of the allegations in it. That's not allowed. What do you do with a Howerton case where we held that creating an appearance that the police sanctioned the eviction? This was not an appearance of sanctioning anything. The letter speaks for itself. It says you recommend that the treaty might be cut down. One of the comments which caught my ear earlier was the plaintiff's counsel saying that the chief can't say, I'm not involved, and he should have stepped back and not done anything in this dispute. Well, that's not how it works. Under the Del Norte County Code, he has the first say as the fire chief as to what constitutes a fire safety hazard under various laws, including the Public Utilities Code. He has to be involved. Under those rules, isn't he required to give notice to the landowner? Yes, of the ruling. There is no requirement that he has to avert his eyes when he sees some violation from a public right-of-way, which Christian Lane is. This is a public right-of-way. He had every right to be there. Now, the one thing I think the court needs to keep in mind is that the letter was not the final word on whether this treaty was going to be cut down. Chief Crawford is not the treaty czar of Del Norte County. His letter merely indicated his recommendation that he is required to give under the Del Norte County Code. The next step involves getting notice, convening a hearing. But to whom is he supposed to make that recommendation? The recommendation had yet to follow, Judge. When the treaty was cut down just days later, actually the treaty was already cut down by the time he decided that something needed to be done. The process blew up. There was no need for notice. The treaty is down. There is no need for a hearing from the county board, who does issue the final order. The treaty was down. At that point, the entire process becomes irrelevant because it was all moot. On that regard, the concept that this letter was somehow emboldening or acquiescing in what Mr. Duncan had done days before is irrelevant. The letter isn't the permission. You have to get an order. The letter was merely an indication that a process should be started, and that process was derailed. The only irrelevance of the letter, since it's apparently after the trees were cut down, is either some, in effect, after-the-fact approval, or it's irrelevant because if the tree's down, the letter's kind of cut. There's nothing in the record saying that my client knew the trees had been cut down. Even Mr. Rimack didn't know immediately when they were cut down. He learned a few days later, too. Mr. Duncan, did you know? There's nothing in the record that says that at the meeting he told them to cut them down. The complaint alleges and my client's declaration says I didn't tell him to cut it down himself. That would be illegal. That's consistent with paragraph 61 of the complaint? Correct. And paragraph 61 says what it says, but it is a pleading admission that my client said that I never gave him permission to cut down the tree himself. I think I should leave at least a few moments for the County of Del Norte who might be able to amplify what I'm saying, though. Thank you. May it please the Court, thank you. I'm John Breeze on behalf of the County of Del Norte. I would like to point out that paragraph 54 of the complaint makes it very clear that the tree was cut one to two days after the single meeting at the premises on a public easement by Mr. Crawford, who was in essence acting as an inspector, similar to any type of inspector for any type of public entity. And I just don't see that single meeting as being a substantial link of creating a state or joint action here. With regard to the County of Del Norte, it is organized under the government code. The fire protection district is under the health and safety code. Plaintiff has alleged some type of nexus that one entity is linked to the other, and in effect I think plaintiff could argue that because the county is a subdivision of the state, that the state of California is in some way liable for the acts of Crawford, who is clearly alleged to be an employee only of the district. And there is an argument in the reply about the agency, but paragraph, I think it's 74 or 79, says an employee of the district and thus an agent. So their whole argument in the pleading creates the agency based on the employment issue. Is there any obligation to train? Is that an allegation here? I'm not aware of any obligation of the County of Del Norte to train members of a fire district within its jurisdiction. Basically, the county code says there's four fire districts here, and those fire districts have their own boards and they do their own training, Your Honor. Thank you. Thank you. Briefly, Your Honors, to the factual question, I don't believe that Chief Crawford submitted a declaration. Randy Duncan submitted a declaration. I don't believe we have a declaration from Chief Crawford. So there's nobody who's saying factually what did or didn't happen at that meeting. We have no way of knowing what happened at that meeting until we conduct discussions. Here, the public official, the Chief Crawford, had a duty to Mr. Rymack, to the property owner. He had a duty to tell him if he thought the tree was causing a problem, if he thought it really was, and he had a duty to give Mr. Rymack the opportunity to respond to that. He didn't do either of those things. The difficulty with that is that the tree, he may have had that duty, but the tree was gone. So in effect. I agree, Your Honor. Either he was aware the tree was gone when he wrote that letter, and then why write the letter, or he wasn't aware and then the letter should have been written to the property owner. Counsel, there's been a point made here that the complaint wasn't verified. I see it's signed by a lawyer in the law firm. Is that adequate under California law? Yes, Your Honor, that is adequate under California law. There's no requirement for a verification of this kind of complaint. Well, the complaint doesn't have to be verified, but if you want reliance in opposition to affidavits, then the verification is required, correct? Your Honor, I don't think that a verification would be required in opposition to affidavits. If the affidavit spoke directly to what happened here, it's still just their side. I mean, it's still just, you know, it's still self-serving. It seems like safe air for everyone versus Meyer, 373, Fed 3rd, 1035, and that 2004 case from our court suggests that by contrast, in a factual attack, the challenger disputes the truth and that by themselves would invoke the federal jurisdiction. If the moving party converts that motion into a factual motion by presenting affidavits or other evidence properly before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden. And at that point, you've got to have a verified complaint. I hear you and I agree, Your Honor, but here the affidavits were not speaking to what the actual events that occurred here. And there is no way for the plaintiff, Mr. Imack, to know what occurred between the defendants until he conducts discovery. I mean, all he could say is this is what I believe happened. You know, if they submit something that is not true, he has no way of checking that. I mean, this is early on, and if this were sort of a factual question about who owned a property and you could submit an affidavit and show somebody else owned the property, then I agree you have a real problem there and you probably don't survive the pleading stage. But that's not here. Here it's a question of what happened between these people. And there's no way for us to know until we conduct discovery. We have your point in mind. Thank all counsel for your argument this morning. The case just argued of Imack v. Duncan is submitted and we're adjourned. Thank you.
judges: Fletcher, McKeown, Smith